**In re Theresa ZIERDEN–LANDMES-SER, RR # 1, Box 181, Dingman's Ferry, PA 18325, Debtor.**

**New Jersey Higher Education Assistance Authority, Appellant,**

v.

**Theresa Zierden–Landmesser, Appellee.**

**Bankruptcy No. 5–95–365. No. CIV.A.4:CV–98–1182.**

United States District Court, M.D. Pennsylvania.

March 31, 2000.

66

Stephen G. Bresset, Honesdale, PA, for Theresa E. Zierden–Landmesser, debtor.

David J. Harris, Wilkes Barre, PA, for New Jersey Higher Education Assistance Authority, appellant.

Stephen G. Bresset, Honesdale, PA, for Theresa E. Zierden–Landmesser, appellee.

### *MEMORANDUM*

KANE, District Judge.

Before the Court is an appeal filed June 26, 1998, by Defendant–Appellant New Jersey Higher Education Assistance Authority ("NJHEAA") pursuant to 28 U.S.C. § 158(a). NJHEAA submitted a supporting brief on August 4, 1998. Plaintiff–Appellee Theresa Zierden–Landmesser filed no brief in opposition. On October 28, 1998, Judge McClure transferred the above-captioned matter to the undersigned.

This appeal seeks reversal of the Bankruptcy Court's holding that Plaintiff–Appellee's student loan obligation owed to Defendant–Appellant is dischargeable. Following trial on June 18, 1998, the Bankruptcy Court rendered its judgment from the bench the same day, issuing no memorandum opinion. Because this Court finds that the court below erred in its legal conclusion that excepting Plaintiff–Appellee's student loan obligation from discharge would impose an undue hardship upon Plaintiff–Appellee, the judgment below will be reversed.

### I. Background

The Debtor, Theresa Zierden–Landmesser, filed a petition under Chapter 7 of the Bankruptcy Code on March 20, 1995. In due course, she received a discharge order

from the Bankruptcy Court and her case was closed. The Student Loan Marketing Association moved to reopen the Debtor's case to file an adversary complaint to determine the dischargeability of a Health Education Assistance Loan ("HEAL") obligation of approximately $100,000.00 owed by the Debtor to it. The case was reopened, a hearing was held and, on October 27, 1997, Bankruptcy Judge John J. Thomas issued an opinion and order holding that the Debtor's loan was not dischargeable under the "unconscionability" standard applicable to HEAL loans and set forth at 42 U.S.C. § 292f(g).[1]

Shortly before the hearing on the HEAL loan, the Debtor filed an adversary proceeding against NJHEAA seeking to determine the dischargeability of her student loan obligation owed to it under the "undue hardship" standard of Section 523(a)(B)(8) of the Bankruptcy Code, now codified at 11 U.S.C. § 523(a)(8). Appellant filed an answer to the Debtor's Complaint, denying that excepting the Debtor's obligation from discharge would cause her an "undue hardship." Appellant subsequently filed an Amended Answer to clarify the amount of the underlying obligation.

A hearing was held on June 18, 1998 before Judge John J. Thomas of the United States Bankruptcy Court for the Middle District of Pennsylvania. At the hearing, the court heard evidence of the following facts.

At the time of the hearing, the Debtor was 38 years old, in good health, and had no occupational health problems that would prohibit her from holding any job. (Tr. pp. 23, 24). She was employed as a part-time podiatrist and a full-time cashier. (Tr. p. 8).

The Debtor earned an associates degree in science, a bachelor of science degree in biology, and a graduate degree in podiatry. (Tr. p. 24). She obtained her license to practice podiatry in the summer of 1991. (Tr. p. 26).

To finance the cost of her undergraduate and graduate degrees, the Debtor incurred numerous loans, including the loan at issue, a Sallie Mae consolidated loan of $52,092.18 which was assigned to the Appellant on November 9, 1993. (Tr. p. 3, Ex. D–1).

The loan carries a seven-percent rate of interest, and, in July 1998, had 18 years remaining on its original 25–year term and a balance of $101,500.00 (Tr. pp. 3, 7, Exs.D–4, D–5). On November 28, 1990, shortly after the Debtor's graduation from podiatry school, the initial monthly loan payment of $396.00 became due. (Tr. pp. 7, 25, Ex. D–4).

In 1992 and 1993, the Debtor sought, and received from Appellant, one-year forbearances on the payment of the loan. (Tr. pp. 40–41, Exs.D–6, D–7). In 1994, the Debtor made payments totaling $800.00. She has made no payments before or since 1994. (Tr. pp. 5, 40, Ex. D–8).

Zierden–Landmesser resides in a very small town, Dingman's Ferry, Pennsylvania. (Tr. pp. 8, 26). She moved there in 1990, before obtaining a podiatry license or securing a job. (Tr. p. 30). While in school, the Debtor did not use the services of a "headhunter" or professional placement service to locate employment. Instead, she opened a part-time podiatry practice in Dingman's Ferry. (Tr. pp. 30–31). The practice has not made a profit, and, in 1997, Zierden–Landmesser incurred a net loss of approximately $340.00, which was less than the loss incurred during the prior year. (Tr. p. 19). The Debtor has elected to continue to reside in Dingman's Ferry. (Tr. p. 36).

The Debtor is employed as a cashier at Mr. Z's, a grocery store, in Marshall's Creek, Pennsylvania (Tr. pp. 8–9) where

---

1. On May 27, 1999, in a separate action filed in this Court, the Student Loan Marketing Association won summary judgment against Zierden–Landmesser for the full amount of the HEAL debt plus interest. *See Student Loan Marketing Ass'n v. Zierden–Landmesser*, No. 98–551 (M.D. Pa. filed Apr. 3, 1998).

she earns $640.00 gross per month. (Ex. P–1). Prior to working at Mr. Z's, she worked at a Jamesway department store as a front desk cashier and in a pizza restaurant as a cook. (Tr. pp. 9, 33).

After she relocated to Dingman's Ferry, Zierden–Landmesser did not use the services of a headhunter to locate podiatry or other work (Tr. pp. 33–34) and did not seek the assistance of the placement staffs at any of her alma maters. (Tr. p. 34).

The Debtor testified that she interviewed once for podiatry jobs in Scranton and Easton, Pennsylvania, but acknowledged that she actively looked nowhere else in Pennsylvania or the United States. (Tr. p. 32). She has not sought to become licensed as a podiatrist in any other state. (Tr. p. 41). The Debtor testified that in the past five years, she has ceased looking for jobs in the podiatry field altogether and has "considered disposing of the whole situation because it's become an enormous headache." (Tr. p. 34). The Debtor further testified that she understood that there is a growth curve in attaining success in her profession, that she did not expect immediate profits, and that she had been working in the podiatry field for a period of only four years prior to her bankruptcy filing. (Tr. pp. 43, 44).

The Debtor testified that although her practice "does grow," it has not been not successful because she depends on elderly people who "kind of come and go" (Tr. p. 9), because potential patients have moved away because of the high taxes in the Dingman's Ferry area (Tr. p. 26), and because of the constraints of insurance companies and Medicare. (Tr. p. 10).

The Debtor also testified that she has not sought to work on the staff of any hospital because she does not engage in bone surgery. Although engaging in open bone surgery would be lucrative, she testified that, because she would have to enroll in a residency program to receive the necessary training, "the headaches may outweigh the gain." (Tr. p. 35). She testified further that she is not affiliated with any managed care provider, such as an HMO or PPO "because the fee restrictions [are] almost as bad as Medicaid." (Tr. pp. 35–36).

Zierden–Landmesser testified that she explored employment in fields other than podiatry by responding to a newspaper advertisement for a position as a biology technician at Connaught Laboratories, Inc. (Tr. p. 22) and by contacting a temporary agency in Stroudsburg. (Tr. p. 23). She speculated that it might be difficult for her to find jobs in fields other than podiatry because potential employers may perceive her as overqualified. (Tr. pp. 41–42). She also testified that there are not many jobs in the Dingman's Ferry area, "without driving two hours or better to get there." (Tr. p. 33).

The Debtor has considered relocating, but has not yet done so. (Tr. pp. 20–21). She stated that all of her extended family, save one aunt, lives in a town in Western Pennsylvania, Marienville, which is within "easy driving distance" of Brookville, Clarion, and Erie, Pennsylvania. (Tr. pp. 20, 27). She testified further that she believed that job opportunities are better there, real estate is cheaper there, and she could eliminate expenses for babysitting of approximately $200.00 per month and the cost of nursery school if she moved there. (Tr. pp. 20, 27–28).

The Debtor's husband works as maintenance repair person and is not confined to a job in Dingman's Ferry. The Debtor acknowledged that her husband, while residing in Dingman's Ferry, often changed jobs and was out of employment for "spots of time." (Tr. p. 11). At the time of the hearing, he worked in Hamburg, New Jersey. Prior to moving to Dingman's Ferry, he worked in Paramus, New Jersey, where he earned substantially more than he does now. (Tr. pp. 28, 29).

The Debtor testified that in 1991, subsequent to incurring her student loan debt and before she found employment, she and her husband had a house built in Ding-

man's Ferry and incurred a mortgage thereon. (Tr. p. 37–38). The mortgage balance is $86,000, while the house is valued between $100,000 and $115,000. (Tr. pp. 12–13, 38). The monthly mortgage payment is $894. (Ex. P–1).

To reduce expenses, the Debtor has considered selling her house, but was concerned about how she would pay the balance owed if it were sold for less than its value. (Tr. pp. 38, 39). The Debtor and her husband have one minor child. (Tr. p. 9).

It is against this factual backdrop that Defendant–Appellant appeals the following two issues.

1. Whether the Bankruptcy Court erred as a matter of law in determining that excepting the Debtor's student loan obligation from discharge would impose an undue hardship upon her under 11 U.S.C. § 523(a)(8), as interpreted under the three-prong test of *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987) (per curiam), and as adopted by the Third Circuit in *Pennsylvania Higher Education Assistance Agency v. Faish*, 72 F.3d 298 (3d Cir.1995), *cert. denied*, 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996).

2. Whether the Bankruptcy Court erred as a matter of law by shifting to the Appellant the burden of proof imposed upon the Debtor to establish each of the three *Faish–Brunner* elements.

## II. Legal Standards

■ Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous. *See* Fed. R. Bankr.P. 8013; *In re Siciliano*, 13 F.3d 748, 750 (3d Cir.1994). A bankruptcy court's conclusions of law are reviewed *de novo. See Insurance Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir.1995). Whether discharging a debtor's

student loans would impose an "undue hardship" under 11 U.S.C. § 523(a)(8) requires a legal conclusion, which is to be reviewed *de novo. See Brunner*, 831 F.2d at 396.

Section 523(a)(8) of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> \*   \*   \*   \*   \*   \*
>
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

■ In determining whether the facts before a court give rise to a finding of "undue hardship," courts in the Third Circuit must apply the three-part test enunciated in *Brunner*, 831 F.2d at 396. *See Faish*, 72 F.3d at 306. Under the *Brunner* test, adopted by the Third Circuit in *Faish*, "undue hardship" exists if all of the following elements are satisfied.

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*Faish*, 72 F.3d at 304–05 (quoting *Brunner*, 831 F.2d at 396).

▮ The *Faish* Court articulated several principles governing the application of this standard. Significantly, it is the debtor who bears the burden of establishing each of the foregoing elements. *See Faish*, 72 F.3d at 306. Unless all three elements are satisfied, a discharge cannot be granted. *See id.* And if any of the requirements of the *Faish–Brunner* test is not met, the Bankruptcy Court's inquiry must end there, with a finding of no dischargeability, and without proceeding to consideration of the remaining *Faish–Brunner* requirements. *See id.* Equitable concerns and other extraneous factors not contemplated by the *Faish–Brunner* framework may not be imported into the court's analysis to support a finding of dischargeability. *See id.*

## III. Discussion

▮ Applying the facts adduced at trial below, this Court now must determine whether Zierden–Landmesser has satisfied her burden of establishing that repayment of her student-loan obligation would impose an "undue hardship" upon her. The first prong of the *Faish–Brunner* test queries whether Zierden–Landmesser can "maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *See id.* at 304–05.

At the hearing, Zierden–Landmesser testified that she was employed full-time as a cashier earning $640 a month, and that her podiatry practice never realized a profit. According to Zierden–Landmesser, her husband's work as a maintenance repair person was intermittent. She testified that she received federal welfare assistance through the Women, Infants, and Children program. Given this extremely low income and the costs of basic necessities and of raising a child, the Debtor has easily established her burden as to the first prong of the *Faish–Brunner* test: she would be unable to maintain a minimal standard of living for herself and her dependent, based upon current earnings and expenses, if required to repay the loan.

Under the second prong of *Faish–Brunner* the debtor must establish additional circumstances indicating that this state of affairs is likely to persist for a significant portion of the repayment period. It is here that the Debtor's case falls short. The rationale for this showing is sound. "Predicting future income is . . . problematic. Requiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, more readily guarantees that the hardship presented is 'undue.'" *Brunner*, 831 F.2d at 396.

Zierden–Landmesser is in good health and in her early forties. Consequently, she reasonably may anticipate approximately 25 more years in the labor market. She offered no evidence that labor demand for persons with her credentials is as poor in alternative locales as it is in Dingman's Ferry. The evidence indicated that the Debtor could, but had chosen not to, relocate to an area where there may be greater demand for her services, and that familial support would be greater in one such place, Marienville, Pennsylvania, which—by Debtor's own testimony—is within reasonable driving distance of Erie, Brookville, and Clarion, Pennsylvania. Such choices are hers to make; they are not, however, choices whose consequences should be borne by NJHEAA. It has aptly been stated that, "Informed free choice of one's chosen pursuits is to be respected and even encouraged, but not to the extent of the judicial forgiveness of debt because of hardships that are both foreseeable and voluntarily assumed." *Fischer v. State Univ. of New York*, 23 B.R. 432, 433 (Bankr.W.D.Ky.1982).

▮ Neither does the record support a finding that the Debtor has satisfied the third prong of the *Faish–Brunner* test. The third prong is the good faith inquiry, and is "guided by the understanding that

undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control." *Faish*, 72 F.3d at 305 (internal quotation marks omitted).

Here, the evidence is that Debtor paid a total of only $800 toward her $101,500 debt, that she is in early middle age and in good health but severely under-employed due to market conditions where she has chosen to reside, that she has stopped seeking work in her chosen field, and that she has failed to thoroughly pursue employment in other fields and geographic areas. In light of this evidence, the Court cannot conclude that Debtor has demonstrated a good faith effort at repayment.

The Court holds, therefore, that the Debtor has not satisfied her burden under the *Faish–Brunner* standard and that her student loan obligation to NJHEAA is not dischargeable under 11 U.S.C. § 523(a)(8). It was error for the Bankruptcy Court to hold otherwise.

### IV. Conclusion

To be sure, the test for dischargeability of student loans set out by the Third Circuit in *Faish* is a stringent one, and not satisfied even in cases presenting facts far more compelling than those of the instant case. *See, e.g., Faish; Brunner.* So, while this student loan obligation is considerable, it is not an obligation that may be discharged in bankruptcy on the facts of this case.

In light of this Court's finding that it was error for the Bankruptcy Court to conclude that undue hardship would result in this case from a finding of nondischargeability, this Court need not address Defendant–Appellant's additional argument regarding the Bankruptcy Court's shifting of the burden of proof. The judgment of the Bankruptcy Court will be reversed in accordance with the foregoing discussion.