EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,
Appellant.

v.

Gail L. STANLEY, Appellee.

No. 4:03 CV 17–RH.

United States District Court,
N.D. Florida,
Tallahassee Division.

June 25, 2003.

---

4. The debtor asserted claims for lost future     profits and wages.

Ramona Raye Curry, Holland & Knight LLP, Jacksonville, FL, for appellant.

William Howard Crawford, Thompson, Crawford & Smiley, Tallahassee, FL, for appellee.

### OPINION ON APPEAL

HINKLE, District Judge.

The Bankruptcy Code precludes discharge of student loans except in cases of "undue hardship." This is an appeal from an order of the Bankruptcy Court finding undue hardship and thus discharging appellee's student loans. I reverse.

### I

Appellee Gail L. Stanley attended Florida State University from 1991 to 1996, earning bachelor's and master's degrees in speech therapy. She paid for her education—and other expenses—with student loans. At graduation, she was 44 years old.[1]

Since graduating, Ms. Stanley has worked in four different speech therapy jobs, earning between $32,000 and $45,000 per year. She currently[2] works at a hospital in Panama City, Florida, netting approximately $2,500 per month.[3] Ms. Stanley left each of the three prior jobs

---

1. Although the record does not indicate the original principal amount of the loans, the total may have been nearly $90,000. In 1996, tuition and fees at Florida State for in-state residents were approximately $1,882 per year for undergraduates and $2,839 for master's students. *See* Florida State University Financial Administration Office of Institutional Research, Comparison Performance Indicators, *available at* http://www.ir.fsu.edu/Performance_Indicators/Comparisons/ (comparing by year FSU's undergraduate tuition and fees to Selected Universities and graduate tuition and fees at FSU to Selected Universities) (last visited June 25, 2003). With books and other education expenses, Ms. Stanley's actual cost of attending Florida State, not counting room and board, thus was nowhere near the amount of her borrowings. Ms. Stanley lived in a small town within commuting distance of Florida State; her room and board apparently were no greater than she would have incurred anyway, even if she had not attended college.

2. Trial occurred on December 4, 2002. The facts are stated as of that date. References to the current situation thus are to their status on December 4, 2002.

3. Ms. Stanley is paid $22.90 per hour. She expects to work approximately 32 hours per week, although that will depend on the availability of work. No number of hours is guaranteed, and Ms. Stanley has not been in her current job long enough to have a reliable record of available hours. If she works 32 hours per week, her gross pay will total approximately $38,000.

voluntarily and has never been unable to find work in her field.

Ms. Stanley's 22–year marriage ended in divorce in 1999. She now lives alone. Her younger son, age 16, lives with the former husband. The couple's other children (a daughter age 18 and son age 23) live on their own. Under the divorce decree, Ms. Stanley is entitled to reimbursement from the former husband for one-half of any amounts paid on the student debt. For her part, Ms. Stanley is obligated to pay one-half of the medical expenses of any minor child or adult child in college—currently this means the younger son and daughter.

Ms. Stanley has been diagnosed with post-traumatic stress disorder caused by abuse she suffered as a minor and abuse inflicted by her husband during and since the couple's marriage. The condition has not, however, prevented Ms. Stanley from working.

Ms. Stanley instituted this voluntary proceeding under Chapter 7 of the Bankruptcy Code. She filed an adversary proceeding seeking discharge of the student debt, whose balance, including interest, had grown to more than $100,000. Appellant Educational Credit Management Corporation ("ECMC"), as assignee of the loans, defended the action.

After trial, the Bankruptcy Court determined that repayment of the student debt would cause "undue hardship" within the meaning of the Code. The Court thus dis-charged the debt. ECMC appeals to this court.

## II

■ Findings of fact of the Bankruptcy Court may be set aside only if clearly erroneous. A finding is clearly erroneous if, based on the entire record, the appellate court is left with a definite and firm conviction that a mistake has been committed. *See, e.g., Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir.1998). *See also Wardwell v. Sch. Bd. of Palm Beach County*, 786 F.2d 1554, (11th Cir.1986) (finding district court's findings were clearly erroneous).

■ The Bankruptcy Court's conclusions of law are reviewed *de novo*. *See Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir.1990); Fed. Bankr.R. 8013.

■ "Undue hardship" is a mixed question of fact and law. Factual findings that inform the determination are reviewed for clear error, while the application of the proper legal standard to the facts as found by the Bankruptcy Court is subject to plenary review. *See, e.g., Pullman–Standard v. Swint*, 456 U.S. 273, 289–91 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1453 (11th Cir.1989).[4]

---

**4.** The Eleventh Circuit has said in a bankruptcy case that mixed questions are reviewed *de novo*. *See In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 n. 2 (11th Cir.2001) (stating that mixed questions are reviewed de novo but noting that even if deference were given to the bankruptcy court's "findings," the result in the case would be the same). *See also In re Marks*, 131 B.R. 220, 222 (S.D.Fla.1991) ("Where an issue raises a mixed question of law and fact, the Court likewise will review the bankruptcy court's determination de novo.") Other circuits sometimes have said a bankruptcy court's "undue hardship" determination is reviewed *de novo*. *See, e.g., Brightful v. Pennsylvania Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 327 (3d Cir.2001). Even so, the *factual* component of the undue hardship issue probably should be reviewed only for clear error. In

## III

Student loans afford borrowers an opportunity to obtain an education they otherwise might not be able to afford. When borrowers graduate, their liabilities typically exceed their assets. If student loans were subject to discharge in bankruptcy on the same terms as ordinary debts, borrowers often would be able to declare bankruptcy and avoid payment. The availability of funds for student loans undoubtedly would diminish.

■ In order to avoid these results, Congress limited the circumstances in which student loans may be discharged. Such loans may be discharged only if denying discharge would "impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).[5]

■ The statute does not define "undue hardship." The most commonly applied test—embraced by both sides in this appeal—was adopted by the Second Circuit in *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir.1987) (per curiam). There the court said a debtor seeking discharge of student loans must make a "three-part showing":

(1) that the debtor cannot maintain, based on current income and expenses, a *minimal standard of living* for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396 (emphasis added). The burden of proving each of these elements is on the debtor. *See, e.g., Brightful v. Pennsylvania Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 326 (3rd Cir.2001) ("The debtor has the burden of establishing each element of [the *Brunner*] test by a preponderance of the evidence.").[6]

■ There is no exact formula for determining what constitutes a "minimal standard of living." It is clear, however, that it is *not* sufficient for the debtor simply to show that being required to repay the debt would diminish his or her existing lifestyle. Under *Brunner*, the debtor is entitled to a "minimal standard of living" for herself and her dependents, but the debtor is not entitled to maintain whatever standard of living she has previously attained, nor the level she would maintain if not required to repay the debt. "Minimal"

the case at bar, the issue is academic; the result would be the same whether the bankruptcy court's undue hardship decision was reviewed de novo or for clear error.

5. Although there is a split of authority on the issue, the better view is that § 523(a)(8) applies to student loans regardless of whether the proceeds are actually used for education or other purposes. *See, e.g., In re Murphy*, 282 F.3d 868 (5th Cir.2002). Ms. Stanley does not assert the contrary. It thus is uncontested that the debt at issue here is dischargeable if and only if failure to discharge the debt would cause "undue hardship."

6. Cases embracing the *Brunner* test include *Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 777 (7th Cir.2002); *Brightful v. Pennsylvania Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 327 (3rd Cir.2001); *In re Rifino*, 245 F.3d 1083, 1087 (9th Cir. 2001); *Kasey v. Pennsylvania Higher Educ. Assistance Agency (In re Kasey)*, 187 F.3d 630, 1999 WL 507274 (4th Cir. Jul.19, 1999) (unpublished table decision). Other courts have adopted slightly different formulations, all generally consistent with *Brunner*. *See, e.g., Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir.2003) (rejecting *Brunner* test and instead applying test established in *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702 (8th Cir.1981)).

does not mean preexisting, and it does not mean comfortable.

■ Some courts have determined a "minimal standard of living" by reference to the federal poverty level. *See, e.g., Elmore v. Massachusetts Higher Educ. Assistance Corp. (In re Elmore)*, 230 B.R. 22, 28 (Bankr.D.Conn.1999) (holding that debtor with three children did not suffer an "undue hardship" because the family income was well above the federal poverty level guidelines); *Vazquez v. United Student Aid Funds, Inc. (In re Vazquez)*, 194 B.R. 677, 680 (Bankr.S.D.Fla.1996) (holding that debtors, whose family was living below the poverty level even without repayment of the student loan, were entitled to undue hardship discharge of the debt). That approach is probably too harsh, at least as a general rule; an individual need not be reduced to poverty to obtain discharge of student loans. But the federal poverty level is perhaps worth noting. For a single person with no dependents, that level is $8,090 per year. Poverty Guidelines of the *Dept. of Health & Human Servs.*, 68 Fed.Reg. 6456–58 (February 7, 2003). Ms. Stanley earns more than four times that amount.

■ More generally, a "minimal standard of living" under *Brunner* must be determined in light of all of the relevant circumstances. In Ms. Stanley's case, this means that her salary should be considered, as well as her right to reimbursement from her former husband for half of any student loan payments, tempered, as appropriate, by the risk that the former husband will renege. Ms. Stanley's obligations, both to support herself and under the divorce agreement, also should be considered. While voluntary payments on behalf of adult children ordinarily ought not be considered, that, too, is not a hard and fast rule; one's "standard of living" may sometimes be affected more by the safety of one's children—grown or not—than by such things as the quality of one's residence. And finally, any available restructuring of this debt that would ease the payment obligation also must be considered.

Under the Income Contingent Repayment Plan, *see* 34 C.F.R. § 685.209, Ms. Stanley's payments could be reduced to 20% of her income; this would set her current payments at approximately $500 per month, prior to any reimbursement by her former husband. After 25 years of such payments, any remaining balance would be forgiven. Payments in this amount certainly will not be easy, but they will not deny Ms. Stanley a minimal standard of living.[7] And if, as Ms. Stanley gloomily forecasts, her health or finances get worse and repayment really does become an undue hardship before she makes the 25–year mark, nothing in this opinion will preclude a further effort at discharge, if otherwise appropriate under the Bankruptcy Code.[8]

---

7. At the time of trial, Ms. Stanley put her monthly income at $2,500 and her expenses at $2,370, not including an additional $150 per month she soon would have to pay for health insurance, leaving her in a $20 per month hole. Her expenses, however, included a furnished apartment she rented after giving her furniture to a daughter; an unfurnished apartment was available for some $300 per month less (perhaps offset in part by increased utility expenses). Moreover, Ms. Stanley's monthly expenses included cellular telephone service, automobile insurance and gas money for adult children totaling nearly $200 per month. Her budget thus was modest, but not minimal. In sum, even based on Ms. Stanley's current budget—not the controlling standard but perhaps a useful starting point—it could not be said that she could not make student loan payments without undue hardship.

8. Ms. Stanley says the Income Contingent Repayment Plan offers only false hope because, she says, any forgiveness of the remaining debt in 25 years will be a taxable event,

■ On balance, Ms. Stanley's circumstances, if considered separate and apart from her abusive former husband and post-traumatic stress disorder, would present a fairly easy case for nondischargeability. She earns some $30,000 per year net, by her own calculation. She lives alone and has no dependents. She is obligated to make only comparatively minor payments for her children. She has no substantial extraordinary expenses. Her financial situation is hardly encouraging, but neither is it dire, even with the obligation to make monthly payments on her student loans. Indeed, Ms. Stanley's circumstances are about what one might reasonably expect after borrowing this much money at this age intending to go into this profession.[9] Courts addressing § 523(a)(8) cases have refused discharge in circumstances significantly worse, and, so far as I am aware, no court has granted a discharge to a person with this much income and this few obligations. *Compare, e.g., Brightful v. Pennsylvania Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324 (3rd Cir.2001) (reversing discharge of approximately $52,000 in student loan debt where debtor was a 46–year–old woman who was intelligent, physically healthy, currently employed, and a single mother of a teenage daughter, and who possessed useful skills as a legal secretary and had no extraordinary non-discretionary expense, and who earned between $8,500 and $20,000 in prior years), *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298 (3d Cir.1995) (refusing to discharge over $31,000 in student debt of 30–year–old single mother who supported an 11–year–old son without child support, suffered from Crohn's disease and had back problems, and earned $27,000 per year), *In re Mallinckrodt*, 274 B.R. 560, 565 (S.D.Fla.2002) (reversing discharge of approximately $73,000 in student loans where debtor never earned an annual income above the poverty level), *Educ. Credit Mgmt. Corp. v. Carter*, 279 B.R. 872 (M.D.Ga.2002) (finding no undue hardship with respect to $30,000 in student debt of 39–year–old married woman with two young children, whose expected monthly income was $365 per month, and whose husband earned less than $35,000 per year), *and New Jersey*

imposing a high tax liability. At least two courts have referred to this potential tax liability as a factor in allowing discharge of student debts. *See Gregoryk v. United States (In re Gregoryk)*, 2001 WL 1891469 (Bankr. D.N.D. March 30, 2001) (unpublished opinion); *Thomsen v. Dept. of Educ. (In re Thomsen)*, 234 B.R. 506, (Bankr.D.Mont.1999). *See also Pennsylvania Higher Educ. Assistance Agency v. Birrane (In re Birrane)*, 287 B.R. 490, 500 n. 2 (9th Cir. BAP 2002) (noting that there is some likelihood that any forgiveness of the student loan debt at the end of the 25 year period may be subject to income tax, but also noting that one court, in *Archibald v. United Student Aid Funds, Inc. (In re Archibald)*, 280 B.R. 222, 228 (Bankr.S.D.Ind. 2002), notes that the tax implications of a discharge under the ICRP are speculative at best given that the ICRP is only eight years old). But it seems a stretch to assert that payment of student loans for 25 years under a federally approved program would create such a tax liability, even under today's tax laws. Forecasting such a tax liability under whatever tax laws will be in effect in 25 years would be sheer speculation. Forecasting the effect any such liability would have on Ms. Stanley's actual standard of living at that time would be even more speculative.

9. Indeed, aside from the abuse and PTSD, Ms. Stanley's circumstances are sufficiently close to what might reasonably have been anticipated that it would be difficult to label any hardship "undue." She notes that speech therapy requirements have increased and salaries have decreased since she entered school, but much of that occurred before she sought her master's degree; even so, she continued to borrow more funds. To be sure, she attributes this to her husband, a separate (and much more troublesome) issue.

*Higher Educ. Assistance Auth. v. Zierden–Landmesser (In re Zierden–Landmesser)*, 249 B.R. 65 (M.D.Pa.2000) (finding no "undue hardship" with respect to approximately $100,000 in student loans of 38–year–old podiatrist who was employed as cashier earning $640 per month, whose husband worked intermittently in maintenance repair, and who received federal welfare assistance), *with, e.g., Kasey v. Pennsylvania Higher Educ. Assistance Agency (In re Kasey)*, 187 F.3d 630 (per curiam) (unpublished table decision) (4th Cir.1999) (discharging approximately $15,000 in student debt of single mother with three minor children whose net monthly income was between $930 and $1,130, and whose monthly expenses exceeded her income by almost $300), *Innes v. Kansas (In re Innes)*, 284 B.R. 496 (D.Kan.2002) (discharging more than $60,000 in student debt of father of six who earned approximately $30,000 per year and had a prosthetic leg and bipolar disorder), *and Cheney v. Educ. Credit Mgmt. Corp. (In re Cheney)*, 280 B.R. 648 (N.D.Iowa 2002) (discharging $15,000 in student loans of 41–year–old divorced mother of two who earned an average of $405 per month, exclusive of child support and various kinds of public assistance).

The only circumstances that makes this case difficult are Ms. Stanley's abusive former husband and post-traumatic stress disorder. Ms. Stanley suggests that this high level of loans was run up at her husband's insistence, that he is still abusive even in divorce, that he will not pay his share of the student loans as agreed and instead will continue to take unreasonable positions that will cause Ms. Stanley to incur further legal expenses and to suffer additional stress, that while her PTSD has not impaired her ability to work to date it may do so in the future, and that speech therapy is a stressful and physically-demanding profession that one cannot reasonably pursue much past age 50. While some of this may be exaggerated, it is no doubt true that Ms. Stanley faces atypical circumstances made worse by her substantial student debt obligation.

It is tempting to conclude that Ms. Stanley has suffered quite enough. She appears to be, at least in some respects, an honest debtor well deserving of the fresh start that the Bankruptcy Code is intended to provide. *See Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *Stellwagen v. Clum,* 245 U.S. 605, 617, 38 S.Ct. 215, 218–19, 62 L.Ed. 507 (1918). But this lender is not responsible for Ms. Stanley's abusive husband or for her post-traumatic stress disorder. The policy decision on what showing is required as a prerequisite to discharge of student loans rests with Congress, and Congress has chosen to prohibit discharge except in cases of "undue hardship." Under *Brunner,* as accepted here by both sides, undue hardship does not exist if a debtor can make the required student loan payments and still maintain a "minimal standard of living." This is, at bottom, a financial issue, and Ms. Stanley, like many other students to whom Congress has denied a discharge, can pay this debt while maintaining at least a minimal standard of living.

For these reasons, the decision of the Bankruptcy Court is REVERSED.