**In re Lorna K. NYS, Debtor.**

**Lorna K. Nys, Appellant,**

**v.**

**Educational Credit Management Corporation, Appellee.**

BAP No. NC–03–1438–MaMcP.
Bankruptcy No. 02–11455.
Adversary No. 02–1162.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 23, 2004.

Filed March 30, 2004.

Christopher G. Metzger, Law Office of Christopher G. Metzger, Eureka, CA, for Lorna K. Nys.

Miriam E. Hiser, Law Offices of Miraim E. Hiser, San Francisco, CA, for Educational Credit Management Corporation.

Before MARLAR, MCMANUS[1] and PERRIS, Bankruptcy Judges.

## OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

In this appeal, we consider the meaning of "additional circumstances" in the test for an "undue hardship" discharge of student loans. The bankruptcy court determined that the healthy, 51–year–old, working debtor, although unable to repay her loans fully in the present or future, did not demonstrate compelling enough circumstances to discharge any part of the loans. We conclude that the court applied an

---

1. Hon. Michael S. McManus, Chief Bankruptcy Judge for the Eastern District of California, sitting by designation.

incorrect legal standard, and therefore we REVERSE AND REMAND.

## FACTS

At the time of the bankruptcy proceedings, Lorna Kaye Nys ("Debtor") was a single woman, with no dependents, who had lived for over 20 years in Fortuna, Humboldt County, California. As a single mother, Debtor raised her two children while she attended college.

To fund her college education, Debtor obtained 13 government-guaranteed student loans totaling $29,000. The loans have been assigned to Educational Credit Management Corporation ("ECMC"). As of July 2003, her student loan debt was approximately $85,000.

In 1989, Debtor received an A.A. degree in Science and Drafting Technology from the College of the Redwoods, and in 1993, at the age of 41, she received a B.A. degree in art from Humboldt State University ("HSU"). After graduating from HSU, Debtor earned about $1,500 a month working as a waitress while seeking employment in the drafting field. In 1996, Debtor was hired as a drafting technician at HSU. In 1999, her gross income was approximately $24,000. Debtor did not make any payments on her loan debt during the 1990's, but instead sought and obtained payment deferments.

By 2003, Debtor had been promoted to Drafting Technician II—the highest drafting level, in which position she now earns about $40,000 per year. She has no other income or any reasonable prospects for earning more in Fortuna, nor has she any intention of looking for another job or moving.

In 1994, Debtor borrowed money from her mother for a down payment on a house, where she now lives. Although the house is in serious disrepair, there is approximately $40,000 in equity.

Debtor travels about 54 miles round trip to work near Eureka, California, in a 1984 car with over 200,000 miles. According to her bankruptcy schedules, Debtor's current monthly income is $2,299.33, which just pays her monthly expenses of $2,295.05. One of these expenses is a $130 payment on her mother's discharged unsecured loan debt. Debtor admitted that she could afford to pay a portion of the student loan debt—about $100 per month, but not all of it.

In 2001, when Debtor's deferments were exhausted and her wages were about to be garnished, she made ten reduced monthly payments totaling $1,450.62. Then, in 2002, Debtor received a collection statement and notice that her payments were increasing from $800 to $917 per month under a 10–year repayment plan. In addition, the monthly payment of $917 would not suffice to pay the accruing monthly interest.

Unable to pay that amount, Debtor was referred by ECMC to the William D. Ford Direct Loan Program ("Ford"). Debtor testified that, after several meetings with Ford representatives, the lowest payment plan Ford had offered her required a $14,000 sign-up fee and monthly payments of about $800 for 50 years, for a total of $250,000. Both parties agreed that even if Debtor qualified for Ford's Income Contingent Repayment ("ICR") program, the best terms would likely be about $389 per month for at least 25 years.[2]

---

**2.** Debtor testified that she did not apply for the ICR program because she was told that she was ineligible. She further maintains that, even if she were eligible, she would be

unable to complete the payments under such a plan. Having just turned 52, her income will decrease to about $1,000 per month after she retires in 13 years.

On June 12, 2002, Debtor filed a voluntary chapter 7[3] petition. She commenced an adversary proceeding to determine that the student loan debt was dischargeable under § 523(a)(8) because it was an "undue hardship."[4] Debtor alleged that she could not afford the $917 minimum monthly payment, and had not been able to obtain affordable loan consolidation. She noted that it was likely that her inability to pay would continue for a significant portion of the repayment period "based on her age and the fact that she is maxed out in her career potential." Plaintiff's Trial Brief (July 29, 2003), at 3. Therefore, she asserted that she met the test for undue hardship formulated in *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396–97 (2d Cir.1987) and adopted by the Ninth Circuit in *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1112 (9th Cir.1998).

ECMC countered that Debtor's circumstances did not constitute undue hardship because Debtor had the present ability to pay some of the loan debt, could not prove that there were any additional circumstances to bar future payment, and had not made a good faith effort to repay the loans.

After trial, the bankruptcy court found that Debtor could not afford to fully repay the loan debt, either now or in the future, and stated:

> She earns about $40,000.00 per year, which is a decent income for Eureka, but is not nearly enough to pay off her student loans and is the most she can reasonably be expected to earn in the foreseeable future.

Mem. Dec., 2003 WL 22888941 (Aug. 11, 2003), at *1.

The bankruptcy court then examined the second prong of the *Brunner* test, which requires the existence of "additional circumstances" indicating that Debtor's state of affairs is likely to persist for a significant portion of the repayment period. In that regard, the court found that Debtor had no dependents and "no serious physical or mental conditions, nor are there any notable circumstances in her life other than a modest income which make it particularly difficult for her to pay the $85,000 in student loans ...." Mem. Dec., 2003 WL 22888941 (Aug. 11, 2003), at *1. Moreover, it found that Debtor was "intelligent, healthy, possessing useful skills, and has no extraordinary expenses." *Id.* at *1. The bankruptcy court concluded that "undue hardship" requires the existence of "exceptional" circumstances, *id.* at *1 & n. 2, and hers were not compelling enough. It stated:

> [I]n addition to mere inability to repay, there must be some additional circumstance, such as serious illness, psychiatric problems, disability of a dependant, or *something* which makes the debtor's circumstances more compelling than those of an ordinary person in debt.

*Id.* at *1.

Finally, the court did not make any findings regarding Debtor's good faith, considering that issue to be both moot and irrelevant. The court entered a judgment denying discharge of the student loan debt, and Debtor timely appealed.

---

**3.** Unless otherwise indicated, all section, chapter, and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

**4.** Section 523(a)(8) provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt for a government funded student loan "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).

## ISSUES

1. Whether the bankruptcy court erred in concluding that Debtor's circumstances did not meet the "additional circumstances" prong of the *Brunner* undue hardship test.

2. Whether the third *Brunner* prong, which requires a good-faith effort to repay the student loan obligation, is relevant to these facts.

## STANDARD OF REVIEW

We review the bankruptcy court's construction of the legal standard in determining whether a student loan debt is dischargeable *de novo*. *See Pa. Higher Ed. Assistance Agency v. Birrane (In re Birrane)*, 287 B.R. 490, 494 (9th Cir. BAP 2002).

## DISCUSSION

Congress' main purpose in enacting the bankruptcy code was to ensure insolvent debtors a fresh start by discharging prepetition debts. *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, under § 523(a)(8), there is a presumption that educational loans extended by or with the aid of a governmental unit or nonprofit institution are nondischargeable in bankruptcy in the absence of undue hardship to the debtor or the debtor's dependents. *See United States v. Wood*, 925 F.2d 1580, 1583 (7th Cir.1991); 11 U.S.C. § 523(a)(8). This law furthers congressional policy to ensure that such loans, extended solely on the basis of the student's future earnings potential, cannot be discharged by recent graduates who then pocket all of the future benefits derived from their education. *See Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir. 1992) (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 466–75, *reprinted in* 1978 U.S.C.C.A.N. 5787).

The debtor bears the burden to prove by a preponderance of the evidence that he or she is entitled to a discharge of the student loan. *See Garner*, 498 U.S. at 291, 111 S.Ct. 654; *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1087–88 (9th Cir.2001).

Neither the code nor the legislative history of § 523(a)(8) defines "undue hardship," but case law has held that it is something more than "garden-variety hardship." *Pena*, 155 F.3d at 1111. Cases involving "real and sustained" hardship may merit discharge. *See Cota v. U.S. Dept. of Educ. (In re Cota)*, 298 B.R. 408, 423 (Bankr.D.Ariz.2003).

The Ninth Circuit has adopted a three-part test for "undue hardship":

First, the debtor must establish "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." . . .

Second, the debtor must show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." . . .

The third prong requires "that the debtor has made good faith efforts to repay the loans . . . ."

*Pena*, 155 F.3d at 1111 (quoting *Brunner*, 831 F.2d at 396).

Debtor must satisfy all three parts of the *Brunner* test before her student loans can be discharged. *See Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1173 (9th Cir.2003); *United Student Aid Funds, Inc. v. Nascimento (In re Nascimento)*, 241 B.R. 440, 444 (9th Cir. BAP 1999) ("The *Brunner* Test has three parts which the court must consider before deciding whether to except a stu-

dent loan from discharge."); *see also Strauss v. Student Loan Office (In re Strauss)*, 216 B.R. 638, 641 (Bankr. N.D.Cal.1998) (each prong must be proven separately). Failure to prove any of the three prongs will defeat a debtor's case.

The bankruptcy court apparently determined that Debtor met the first *Brunner* prong,[5] because it found that she "is clearly incapable of repaying more than a portion of her student loans." Thus, it found that she was incapable of repaying the $85,000 and still maintaining a minimal standard of living. Neither party has challenged that finding in this appeal.

### A. "Additional Circumstances" Test

The focus of this appeal is the court's ruling on the second *Brunner* prong, which requires the debtor to show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. Stated in the affirmative, this part of the *Brunner* test considers whether there is a likelihood that the debtor's financial situation will improve sufficiently to permit the debtor to repay the loans.

Debtor contends that she proved "additional circumstances" indicating her future inability to repay, as follows: (1) she has "maxed out" in her career and has no other job skills; (2) although earning the top wage for her position at HSU, she is still unable to make the monthly payments; (3) she is 51 years old and has lived in Humboldt County for more than 20 years, having a home and family ties there, making moving an unavailable option; (3) her expenses will only increase for house repairs and transportation, be-

cause her house needs major repairs and her 1984 car with over 200,000 miles will soon have to be repaired or replaced; and (4) after she retires, in about 13 years, her income will drop to approximately $1,000 per month.

ECMC maintains that the bankruptcy court was correct when it found that Debtor did not prove "exceptional" circumstances such as "serious illness, psychiatric problems, disability of a dependant, or *something* which makes the debtor's circumstances more compelling than those of an ordinary person in debt." Mem. Dec., 2003 WL 22888941 (Aug. 11, 2003), at *1 & n. 2 (emphasis in original).

This appeal requires us to examine more closely the meaning of "additional circumstances," as used in the *Brunner* test. First, we note that a respected bankruptcy treatise, in describing the *Brunner* test, does not characterize the nature of the required additional circumstances:

The second prong of the test requires that the court make a predictive judgment as to the likelihood that the debtor's financial hardship will continue for a significant portion of the repayment period. There are two elements to the second prong. The first is whether the debtor's financial difficulties are "likely" to continue. Under this standard, a debtor must establish by a preponderance of the evidence that the debtor's financial situation is not likely to improve; the debtor is not required to prove with certainty that the financial situation will not improve. The court's judgment on this question necessarily must be based on a consideration of the debtor's education, work history, health and other relevant circumstances. The

---

**5.** It is not entirely clear whether this element was resolved, because the bankruptcy court did not address ECMC's specific objections under the first prong. The bankruptcy court is not prevented from reconsidering this prong on remand.

second element of the second prong is that the financial difficulties must be likely to persist for a significant portion of the repayment period.

4 *Collier on Bankruptcy* ¶ 523.14[2], at 523–100 (Alan R. Resnick and Henry J. Sommer eds., 15th ed. rev.2003).

In *Brunner,* the Second Circuit referred to the "additional, exceptional circumstances" required under the test. *Brunner,* 831 F.2d at 396. That showing, it opined, was meant to aid the courts in "predicting future income" and was reasonable in light of congressional intent "to make the discharge of student loans more difficult than that of other nonexcepted debt." *Id.* The *Brunner* court explained:

> Predicting future income is, as the district court noted, problematic. Requiring evidence not only of current inability to pay but also of *additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time,* more reliably guarantees that the hardship presented is "undue."

*Id.* (emphasis added).

█ Thus, the *Brunner* test focuses on whether the circumstances show a "certainty of hopelessness, not simply a present inability to fulfill financial commitment." *Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner),* 46 B.R. 752, 755 (S.D.N.Y.1985) (citation omitted), *aff'd,* 831 F.2d 395 (2d Cir.1987). *See also Hemar Ins. Corp. of Am. v. Cox (In re Cox),* 338 F.3d 1238, 1242 (11th Cir.2003) (adopting *Brunner* test and stating it is an effective tool in analyzing an inability to pay that is likely to continue for a significant time).

█ We conclude that, under the *Brunner* test, "additional circumstances" are not defined solely by their nature or by a convenient label, but instead by their ef-

fect on the debtor's "continuing inability to repay over an extended period of time." *Brunner,* 831 F.2d at 396. Therefore, the difference between "garden-variety hardship," *Pena,* 155 F.3d at 1111, and dischargeable student loan debt is simply that the latter requires a showing of circumstances enabling the court to predict the longevity of the financial hardship, on a case-by-case basis.

For example, in *Brunner,* the chapter 7 debtor filed for bankruptcy only months after she graduated with a master's degree, and then sought to discharge her student loan debt one month before the loan payments came due. *Brunner,* 831 F.2d at 397. Looking at the second prong of the test it had just adopted, the Second Circuit found:

> The record demonstrates no "additional circumstances" indicating a likelihood that her current inability to find any work will extend for a significant portion of the loan repayment period. She is not disabled, nor elderly, and she has— so far as the record discloses—no dependents. No evidence was presented indicating a total foreclosure of job prospects in her area of training.

*Id.* at 396–97.

The *Brunner* court's list of indicia was very abbreviated and clearly left the interpretation of the "additional, exceptional circumstances" language to the courts' discretion.

The Ninth Circuit adopted the *Brunner* test in *Pena.* In analyzing the "additional circumstances" prong of the *Brunner* test, the *Pena* court found that the debtor wife had a serious mental disability, which prevented her long-term stability and would likely interfere with her ongoing and future ability to work. *See Pena,* 155 F.3d at 1113. The *Pena* court also considered the lack of economic value of the debtor husband's education. *Id.* at 1114. In

*Pena*, these were the additional circumstances which met the second prong of the *Brunner* test. *See Pena*, 155 F.3d at 1113–14.

The Ninth Circuit has not presented an exhaustive listing of what "additional circumstances" must be present in order to justify an undue hardship finding. Nor does it restrict "additional circumstances" to only those circumstances found in *Pena*. In fact, when reviewing the law from other circuits, the *Pena* court found that the second prong of the *Brunner* test was indistinct from the Sixth Circuit's corresponding test element, which required a finding that " '[t]here is no indication that [the debtors'] financial situation will improve in the foreseeable future.' " *Pena*, 155 F.3d at 1112 n. 4 (citing *Cheesman v. Tenn. Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 360 (6th Cir. 1994)). *Cheesman* also did not list precisely what types of circumstances would meet the test.

We considered application of the second prong of the *Brunner* test in *Birrane*. There, a 36–year old, single woman dance instructor with no dependents, in good physical and mental health, failed to prove that she could not earn more money in the future. At the time of the discharge proceeding, the debtor was working only 25 hours a week as a dance instructor and was donating the same amount of time to her nonprofit and potentially successful dance studio. *Birrane*, 287 B.R. at 498.

In analyzing the second *Brunner* prong, we used a two-step analysis. First, we analyzed whether there were any "insurmountable barriers" to the debtor's financial recovery that would lead the bankruptcy court to believe that she "will lack the ability to repay for several years." *Birrane*, 287 B.R. at 497 (quoting *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir.1993)). We opined that "[e]xamples of such barri-

ers may include psychiatric problems, lack of usable job skills and severely limited education." *Birrane*, 287 B.R. at 497. Finding that debtor had no serious medical, educational, or "other problems," we determined that there were no barriers to future repayment. *Id.* at 497–98.

We then looked at the debtor's "future prospects for employment." We determined that they were promising, and included greater income and the growth of her dance company. *Id.*

 Unlike the bankruptcy court in this case, we do not read *Pena* or *Birrane* as imposing a requirement that the "additional circumstances" of the second *Brunner* factor be "exceptional" circumstances such as "serious illness, psychiatric problems, disability of a dependant, or *something* which makes the debtor's circumstances more compelling than those of an ordinary person in debt." Mem. Dec., 2003 WL 22888941 (Aug. 11, 2003), at *1 & n. 2 (emphasis in original). Additional circumstances are any circumstances, beyond the mere current inability to pay, that show that the inability to pay is likely to persist for a significant portion of the repayment period. The circumstances need be "exceptional" only in the sense that they demonstrate insurmountable barriers to the debtor's financial recovery and ability to pay. The court may consider any number of circumstances that relate to future ability to pay. Depending on the case, the debtor's age, training, physical and mental health, education, assets, ability to obtain a higher paying job or reduce expenses, and other factors not listed here may be relevant. The test is, by its nature, case-by-case.

Here, Debtor presented evidence that she had "maxed out" in her career. Although Debtor did not present evidence of the job market in other cities, neither was

there any evidence to suggest that moving would improve her economic lot. Even if Debtor could earn more as a drafting technician in a larger city, her living expenses might increase proportionately. There was no evidence to suggest that Debtor had any other employable skills or that she could learn new skills at this point in her life. Debtor's age indicates that the duration of her work life is limited, and Debtor showed that she will have less income on retirement than she has now. She has a long commute to work, which weighs against a finding that she could obtain additional part-time work. These are all additional circumstances that could be found to create the necessary insurmountable barrier to her ability to repay the student loans.

Debtor's circumstances differ from the facts in *U.S. Dept. of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89 (5th Cir. 2003), cited in ECMC's brief. In *Gerhardt*, the 43–year–old debtor obtained government-insured student loans to finance his education, which culminated in a master's degree in music from the New England Conservatory of Music. As the principal cellist for the Louisiana Philharmonic Orchestra, he earned only $1,680.47 per month. He was well-educated, healthy and had no dependents, yet he had only repaid $755 of his over $77,000 debt. *Id.* at 91–92.

When the debtor sought a discharge of the debt, the bankruptcy court entered judgment in his favor, and the district court reversed. The Fifth Circuit then affirmed the district court's judgment of nondischargeability, applying a strict standard:

This second aspect of the test is meant to be "a demanding requirement." Thus, proving that the debtor is "currently in financial straits" is not enough. *Instead, the debtor must specifically prove "a total incapacity ... in the future to pay [his] debts for reasons not within [his] control."*

*Id.* at 92 (internal citations omitted) (emphasis added).

The Fifth Circuit found that the debtor did not prove undue hardship because, although he had chosen to work in a low-paying job in the field in which he was trained, he could obtain additional steady employment in a number of different arenas, such as teaching. *Id.* at 92.

In the instant case, the bankruptcy court and ECMC also cited *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324 (3d Cir.2001). In that case, the debtor had worked for over a decade as a legal secretary. At the time she sought to discharge her student loan obligations, she was only working part-time. She alleged that she suffered from emotional and psychiatric infirmities, but offered no proof of the severity of her condition or of how it affected her work. *Id.* at 330. The Third Circuit found no impairment in the debtor's ability to work full time in the future, and reversed the judgment in her favor, finding no undue hardship under the second *Brunner* prong. *Id.*

▇▇▇ In our case, Debtor has maximized her earning potential. Unlike the debtors in *Birrane, Gerhardt,* and *Brightful,* Debtor has not chosen to minimize her income. Having maximized her income, Debtor still cannot afford to repay the student loan obligation in full.[6] Although

---

**6.** In bankruptcy court, ECMC argued that Debtor's failure *to* lower her monthly payment by obtaining a loan through the ICR program was evidence that she has not max-

imized her income under the second *Brunner* prong. ECMC has not raised this argument on appeal, and therefore it is waived. *See Brooks v. City of San Mateo,* 229 F.3d 917,

negative advancement potential may not be a dramatic or exceptional circumstance by itself, it nonetheless is a circumstance that may present a unique barrier to future repayment capacity, and a factor which is beyond Debtor's control.

■ We recognize that courts are often reluctant to find undue hardship under the *Brunner* test when the debtor's income is well above the poverty level, as in this case where Debtor earns $40,000. *See, e.g., Educ. Credit Mgmt. Corp. v. Stanley,* 300 B.R. 813, 819–20 (N.D.Fla.2003) (50–year old single woman earning $30,000 annually would not have qualified for undue hardship but for other "difficult" circumstances which possibly impaired her future employability).[7] However, in light of the heavy debt burden many students are now shouldering, the mere fact that a debtor earns above the poverty level is not itself a basis for finding that there are no additional circumstances showing that the inability to pay will persist.

ECMC also maintains that Debtor's own choices created her dire financial circumstances. *See Pa. Higher Educ. Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 307 (3d Cir.1995) (debtor must prove "a total incapacity ... in the future to pay [her] debts for reasons not within [her] control.") (citation omitted) (alteration in original). Here, Debtor chose to major in art and drafting and, although she was 41 years old when she graduated, she chose to seek payment deferments for several years.

The "additional circumstances" test does not focus on a debtor's past choices, but on currently existing circumstances and what those circumstances show with regard to the debtor's future financial situation. Debtor was granted loans and deferments by the government, presumably under the government's standards. There is no basis under *Brunner* for punishing Debtor for taking advantage of the programs the government offered.[8]

In sum, we conclude that "additional circumstances" under the second prong of the *Brunner* test must be indicia of a debtor's inability to repay the loan in the future. Such circumstances need not be "exceptional," except in the sense that they are tenacious and demonstrate insurmountable barriers to the debtor's financial recovery and ability to pay for a significant portion of the repayment period. This approach gives the courts the appropriate flexibility to do justice in each unique case.

■ Based on the prior case law and this case, "additional circumstances" may include the following nonexhaustive list of factors:

1. Serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement; *Brunner,* 831 F.2d at 396;

2. The debtor's obligations to care for dependents; *Id.*;

3. Lack of, or severely limited education; *Pena,* 155 F.3d at 1114;

4. Poor quality of education;[9]

922 n. 1 (9th Cir.2000). We have held that the Debtor's efforts to negotiate a repayment plan fall under the third prong, which is the good faith analysis. *Birrane,* 287 B.R. at 499.

**7.** The additional circumstances in *Stanley* were an abusive former husband and, thus, increased legal expenses, and posttraumatic stress disorder. *Stanley,* 300 B.R. at 819–20.

**8.** The deferments may be relevant to the third prong of the *Brunner* test, *i.e.,* whether Debtor made a good-faith effort to repay.

**9.** *See Pena,* 155 F.3d at 1114 (educational training for a job in an over-saturated market); *Cota,* 298 B.R. at 418 (school's incompetency); *Speer v. Educ. Credit Mgmt. Corp. (In*

5. Lack of usable or marketable job skills; *Birrane,* 287 B.R. at 497;

6. Underemployment; [10]

7. Maximized income potential in the chosen educational field, and no other more lucrative job skills;

8. Limited number of years remaining in work life to allow payment of the loan; *Brunner,* 831 F.2d at 396;

9. Age or other factors that prevent retraining or relocation as a means for payment of the loan;

10. Lack of assets, whether or not exempt, which could be used to pay the loan;

11. Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income;

12. Lack of better financial options elsewhere.

We hold that the bankruptcy court applied an incorrect legal standard in its determination as to the second *Brunner* prong. Upon remand, the court is instructed to reconsider the "additional circumstances" requirement in light of the above analysis.

### B. Third Prong: Good Faith Effort

The third prong of the *Brunner* test requires that Debtor prove that she has made a good faith effort to repay the loans.

Debtor maintains that the bankruptcy court made an oral finding of good faith. While the trial transcript shows that the bankruptcy court did make a preliminary oral finding of good faith, the court later decided that the good-faith portion of the test was moot and irrelevant.

A determination of undue hardship requires proof as to all three *Brunner* prongs. *Saxman,* 325 F.3d at 1173; *Nascimento,* 241 B.R. at 445. Therefore, the third prong is relevant to a determination of undue hardship for a full or partial discharge of Debtor's student loan obligation. If the bankruptcy court finds that Debtor has met the second, additional circumstances test, it must also consider whether the third prong of the *Brunner* test is met.

### CONCLUSION

The bankruptcy court erred in requiring Debtor to prove "exceptional circumstances" in order to satisfy the second prong of the *Brunner* undue hardship test. We remand for application of the correct "additional circumstances" test. On remand, the bankruptcy court will be free to reapply the *Brunner* test, including considering any potential present and future equity in Debtor's real property asset as a source of payment. The third *Brunner* good-faith-effort prong is also required to

---

*re Speer),* 272 B.R. 186, 187 (Bankr.W.D.Tex. 2001) (trade school had improperly trained debtor and few graduates obtained jobs).

**10.** *See Carter v. Commonwealth of Pa. (In re Carter),* 295 B.R. 555, 560–61 (Bankr.W.D.Pa. 2003) (business school dropout working in low-paying fast food industry); *Patterson v. Educ. Credit Mgmt. Corp. (In re Patterson),* 251 B.R. 866, 867–68 (Bankr.N.D.Cal.2000) (debtor, with no "special" circumstances other than low income and inability to pay demonstrated undue hardship because her underemployment and financial straits would likely persist); *Peel v. SallieMae Serv'g–Heal Loan (In re Peel),* 240 B.R. 387, 394–95 (Bankr. N.D.Cal.1999) (unlicensed chiropractor working as medical software company representative with limited growth potential); *Great Lakes Higher Ed. Corp. v. Brown (In re Brown),* 239 B.R. 204, 208 & n. 5 (S.D.Cal. 1999) (education did not increase earning potential of the debtor U.S. Marine who could not complete law school).

be met and, therefore, is relevant to a determination of undue hardship. On remand, the bankruptcy court may exercise its equitable authority to grant a partial discharge if it determines that repayment of the entire debt would constitute an undue hardship.[11]

REVERSED AND REMANDED.

11. Debtor conceded that she has the ability to pay a portion of the debt. Therefore, if on remand the bankruptcy court finds undue hardship, the court may exercise its equitable authority under § 105(a) to grant a partial discharge. *See Saxman,* 325 F.3d at 1175.