In re Tammy RUSSOTTO, Debtor.

Tammy Russotto, Plaintiff,

v.

Educational Credit Management Corporation, Defendant.

Bankruptcy No. 05–25881–BKC–JKO.
Adversary No. 05–06121–BKC–JKO.

United States Bankruptcy Court,
S.D. Florida,
Fort Lauderdale Division.

April 5, 2007.

Gordon S. Daniels, Esq., Ft. Lauderdale, FL, for Plaintiff.

John D. Eaton, Esq., Ft. Lauderdale, FL, for Defendant.

### ORDER DETERMINING STUDENT LOAN NON–DISCHARGEABLE

JOHN KARL OLSON, Judge.

**THIS MATTER** came before the Court for trial on January 31, 2007, on Tammy Russotto's (the "Debtor") Complaint to Determine the Dischargeability of Student Loan[1] (the "Complaint"). The Court has examined the papers before it, taken testimony, listened to arguments, and is satisfied that it is appropriate to rule.

### I. Jurisdiction

The Court has jurisdiction under 28 U.S.C. §§ 1334, 157 and 523. This is a

---

1. The Complaint was originally filed against Sallie Mae Trust—LSC/FL a/k/a Sallie Mae. On March 8, 2006, Sallie Mae filed an Unopposed Motion for Substitution of Education Credit Management Corp. ("ECMC") as Party Defendant due to Transfer of Interest (the "Motion") [CP 12]. The Court granted the Motion on March 22, 2006 [CP 13].

core proceeding pursuant to 11 U.S.C. § 157(b)(2)(I).

## II. Facts

The Plaintiff filed for bankruptcy protection under chapter 7 on September 13, 2005. On December 9, 2005, the Debtor filed the Complaint to determine the dischargeability of her daughter's student loan pursuant to 11 U.S.C. § 523 [2] owed to Sallie Mae. The Debtor took out the loan to pay for a portion of her daughter's expenses at the Art Institute of Fort Lauderdale.

The Debtor lives with her non-debtor spouse, Brain Russotto, and her daughter, Tiffany Russotto. The Plaintiff is not employed and currently receives Social Security Disability for a variety of ailments in the amount of $454.00 a month. Brian Russotto is employed as a security guard for a condominium complex and earns $1,216.88 a month after taxes. Tiffany Russotto earns approximately $785.56 a month, but does not contribute to the household expenses. *Plaintiff's Ex. A.*[3] The Debtor's and her non-debtor spouse's combined monthly income is $1,670.88 after-taxes, slightly more than $20,000 per annum. The 2007 Federal Poverty Guidelines list the poverty line for a family of three at $17,170 and a family of two at $13,690. *Plaintiff's Ex. D.*

The student loan owed to ECMC is eligible for consolidation into the William D. Ford Program (the "Ford Program") as detailed in 34 C.F.R. § 685.100 *et seq.* It is undisputed that the Plaintiff has not applied for the Ford Program and has so far refused to apply for the Ford Program. Counsel for ECMC represented to the Court that one of repayment options available to the Debtor under the Ford Program would allow her to pay $39.38 a month and remain current under the loan owed to ECMC.[4] Plaintiff's counsel did not dispute that representation.

## III. Analysis

■ The Bankruptcy Code does not define what constitutes an "undue hardship" as required under 11 U.S.C. § 523(a)(8) to except a student loan debt from discharge. However, both parties agree that the

2. The Complaint did not detail what subsection of 11 U.S.C. § 523 the Debtor is moving under, but the Court presumes the Debtor moves under 11 U.S.C. § 523(a)(8), which deals with exceptions to discharge and denies a debtor a discharge from a debt "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for(A)(i) a educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution; or (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by the debtor who is an individual."

3. Plaintiff's Ex. A, the Debtor's Responses to Interrogatories, was not admitted to establish the truth of the matter asserted, but Defendant's counsel did not object to in-court testimony that Tiffany does not contribute to household expenses.

4. One of the repayment programs available to the Debtor under the Ford Program is the Income Contingent Repayment Plan ("ICRP"). *See* 34 CFR § 685.209(a)(2) and (3). The ICRP is a program under which the amount of a debtor's monthly payments on a student loan are based upon the debtor's adjusted gross income less the amount set forth in the HHS Poverty Guidelines. 34 CFR § 685.209(a)(2) and (3). The program allows a debtor to extend the student loan payments over a 25–year period. 34 CFR § 685.209(c)(4)(i). At the end of the period, if the borrower has not repaid the loan in full, the remaining loan balance is cancelled. 34 CFR § 685.209(c)(4)(iv).

Court should look to the test established in *Brunner v. New York State Higher Educ. Services,* 831 F.2d 395 (2nd Cir.1987), which was adopted by the Eleventh Circuit in *In re Cox,* 338 F.3d 1238 (11th Cir.2003). *Cox* held that it is clear from the 1998 amendments to § 523(a)(8) that it is "Congress's intent to make it harder for a student to shift his debt responsibility onto the taxpayer.... Moreover, the *Brunner* test leaves an avenue of relief and is an effective tool for identifying those debtors whose earning potential and circumstances make it unlikely that they will produce the means necessary to repay the student loans while maintaining a minimal standard of living." *Id.* at 1242. The three prongs of the *Brunner* test are: (i) the debtor must demonstrate that continued payments on the loan, given his/her current expenses, will cause the debtor's family to fall below a minimal standard of living; (ii) the debtor must then demonstrate that this inability to pay will extend for a significant portion of the repayment period; and (iii) the debtor must have made a good faith effort to repay the loan. *Brunner,* 831 F.2d at 396.

▆▆▆ The plaintiff bears the burden of proving all three prongs of the "undue hardship" test. *In re Webb,* 132 B.R. 199 (Bankr.M.D.Fla.1991). Preponderance of the evidence is the standard of proof in student loan discharge cases. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). If one of the elements of the test is not proven, the inquiry ends, and the student loan is not discharged. *In re Webb,* 132 B.R. at 202. The Debtor has failed to carry her burden.

## A. Minimal standard of living

▆▆▆ The first prong of the *Brunner* test is that continued payment of the debt will cause the debtor to fall below the minimal standard of living. This prong is fact intensive and requires the Court to analyze the Debtor's income and expenses to determine whether excepting the student loan from discharge would cause the Debtor to fall below the minimal standard of living.

The Debtor lists the combined monthly income of her non-debtor husband and herself as $1,666.88 a month on Schedule I of her petition and lists their combined monthly household expenses as $1,894.00 a month on Schedule J of her petition. Poverty guidelines, published annually in the Federal Register, indicate that the 2007 poverty level for a family of two was $13,690 and $17,170 for a family of three.[5] The Debtor's and her non-debtor spouse's annual income is approximately $20,000, which is above the federal poverty guidelines for both a family of two or for a family of three. Although the Debtor and her non-debtor spouse's income surpasses the level set forth by the federal poverty guidelines, the Debtor's monthly household expenses exceed the monthly household income by $227.12.

▆▆▆ The Court is certainly sympathetic to the Debtor's financial situation and finds that on the whole, the Debtor and her family live a modest existence. The minimal standard of living test does not require a debtor to eliminate all expenses that exceed mere subsistence. Other courts have concluded that "people must have the ability to pay for some sort of small diversion or source of recreation, even if it is just watching television or

---

**5.** The Debtor and non-Debtor spouse's daughter lives with them and earns over $9000 a year, but the Debtor testified that she does not contribute to the house hold expenses. For the purpose of this analysis her earning will not be included in the calculation of the Debtor's household income.

keeping a pet." *In re Ivory,* 269 B.R. 890, 899 (Bankr.N.D.Ala.2001). This Court finds the reasoning in *Ivory* persuasive; however, this Court has a hard time reconciling the Debtor's $130.00 a month cable and internet bill[6] with her argument that requiring her to repay the student loan would be an undue hardship.

The Court in *In re Southard,* 337 B.R. 416, 421 (Bankr.M.D.Fla.2006), stated that "plaintiff could cut down on some of [his] expenses ... without causing his lifestyle to fall below the minimal standard of living. For example, it is unreasonable for Plaintiff to spend money on internet access when he could obtain the same service free at the public library." *Southard,* 337 B.R. at 421. This case presents different facts from those present in *Southard.* The court in *Southard* determined that the plaintiff there did not have any physical disability or physical condition that would keep him from working, *Id.* at 419, or, presumably, from visiting the public library. It is undisputed that the Debtor in this case suffers from a variety of ailments and these may make trips to the library to access the internet more difficult. Additionally, the Debtor testified that because of her health she needed access to the internet to stay in contact with her friends and family and remain connected to the world at large. Moreover, this Court does not adopt the view implicit in *Southard* that internet access from home is a luxury or frivolity which is inherently unnecessary as part of a minimal standard of living.

However, the fundamental point addressed by the *Southard* court is applicable to this case: there is an alternative avenue through which the Debtor could access the internet which would allow her to maintain a minimal standard of living. She could access the internet at home through a much more economical dial-up connection rather than the high-speed connection she currently uses and apply the savings to servicing the student loan.

A number have courts have found expenses for cable television reasonable for a minimal standard of living under the first prong of the *Brunner* test. *In re Frushour,* 433 F.3d 393 (4th Cir.2005) (stating in *dicta* that cable and internet expenses alone would not disqualify the debtor from an undue hardship discharge); *In re Douglas,* 366 B.R. 241 (Bankr.M.D.Ga. 2007) (finding that a $48.00 a month expenditure on cable television and internet is not inconsistent with the minimal standard of living); *In re McLaney,* 314 B.R. 228 (Bankr.M.D.Ala.2004) (the court concluded that a $65.00 a month expenditure on cable television was reasonable). Under the circumstances of this case, this Court cannot reach a similar conclusion with regards to Debtor's $130.00 cable and internet bill.

The Court finds that the Debtor's expenses for cable and internet in this situation, while desirable and arguably reasonable in the abstract, become unreasonable when measured under the first prong of the *Brunner* test: a *"minimal* standard of living." The Debtor's $130.00 a month cable and internet bill includes upgraded services like digital cable, high-speed internet, and multiple screens of the premium channel HBO. *Plaintiff's Ex. C.* The Court agrees that the minimal standard of living under *Brunner* should provide some room for life's small indulgences, like cable tele-

---

6. Debtor's cable and internet bill from May 16, 2005 to June 15, 2005 [*Plaintiff's Exh. C*] includes the following detail: Standard Cable Package $46.95 (includes Basic 1 $11.50 and Basic 2 $35.45), Digital Plus HBO $23.99 (includes Digital Plus, Multiple Screens of HBO), Comcast Internet Service $45.95 (includes: faster speed ($42.95), modem rental ($3.00) and ($15.00 Discount for Comcast Cable Customers)).

vision or internet access, but the Court finds that the Debtor could maintain these niceties through a much more economical cable and internet package and still have money to pay the small amount—currently $39.38 per month—needed to stay current on the student loan. Because the Debtor has failed to establish the first prong of the *Brunner* test, the Court is unable to grant the discharge the Debtor seeks. However, even if the Court were to find that the Debtor was unable to service the loan while maintaining a minimum standard of living, the Debtor would still not be able to meet the other prongs of the *Brunner* test.

## B. Inability to repay will extend into the future

■ The second prong of the *Brunner* test requires the debtor to demonstrate that the inability to repay the debt will extend into the future for a significant period of time. *Brunner*, 831 F.2d at 396. It is undisputed that the Debtor is receiving Social Security Disability benefits for a variety of ailments. The Debtor has not been employed in some time, and the Court finds it unlikely that this will change in the foreseeable future. Brian Russotto has been working as a security guard at the same condominium complex for over a decade. He testified that he is paid hourly and during the course of his employment, he has received small raises that usually amount to no more than a hourly rate bump of a quarter or fifty cents an hour. The Court concludes from these facts and from its observation of Mr. and Mrs. Russotto during their testimony that neither the Debtor's income, nor that of her family, is likely to increase in the foreseeable future.

However, as noted in the analysis of the first prong of the *Brunner* test, the Court found that the Debtor could remain cur-

rent on the loan even under in her family's current financial state. It therefore follows logically that where there is no current inability to pay, and no reasonable prospect of a change in circumstances, no inability to pay can be presumed to continue into the future. Since the second prong of *Brunner* assumes that the debtor is currently unable to remain current on the student loan, the second prong of *Brunner* can never be satisfied where (a) the debtor is currently able to pay and (b) no diminishment of income can be reasonably anticipated. Since both of these conditions are present here, the Debtor has failed this prong of the *Brunner* test.

## C. The good faith test

■ The final prong of the *Brunner* test is the good faith test. *Brunner*, 831 F.2d at 396. The debtor is required to demonstrate that she has made a good faith effort to repay the loan.

The courts in many cases consider whether debtors have taken advantage of any programs or services available to ease the burden of educational debt. Many times these programs can consolidate the different loans and/or extend the repayment period, thereby reducing the monthly payments. In *In re Cianciulli*, 2005 Bankr.Lexis 1129 (Bankr.D. Or. June 7, 2005), the court determined that the debtor's failure to enroll in a debt consolidation service prevented him from demonstrating a good faith effort to repay the loans. *In re Cianciulli*, 2005 Bankr.Lexis 1129 at 14. The court stated that in order to fulfill the good faith requirement for discharge debtors "must avail themselves of available repayment plans, or demonstrate that these plans are inaccessible or inappropriate." *Id.* at 12.

In similar fashion, the court in *In re Brosnan*, 323 B.R. 533 (Bankr.M.D.Fla. 2005), decided that even though the debtor

had made payments upwards of $50,000 on her outstanding debt, a finding of a good faith effort was not possible. *In re Brosnan*, 323 B.R. at 538. The court considered the fact that she still owed over $100,000 in debt and that she had failed to negotiate, or attempt to negotiate, a payment plan. *Id.* at 538–39.

The Debtor testified that initially she was able to make payments on the student loan with the assistance of her mother-in-law, but she did not expect to receive such help in the future. The Court finds that during the period that the Debtor serviced the student loan with the help of her mother-in law, she was acting in good faith to repay the loan. However, it is undisputed that the Debtor has not taken advantage of any of the various student loan debt consolidation programs that would allow her to pay a small monthly sum and remain current on the loan. Counsel for ECMC proffered that Debtor would be eligible to consolidate the student loan under the Ford Program and would be considered current if she made payments of $39.38 a month. The Debtor offered no satisfactory explanation for why she had not pursued consolidation under the Ford Program nor any evidence to contradict ECMC's assertion that the loan could be maintained in a current status for a payment of $39.38 a month. The Debtor has thus failed to demonstrate to the Court that she has met the good faith requirement of the *Brunner* test. Consequently, even if the Court were to find that she was able to meet the first and second prong of the *Brunner* test, which she has not, the Debtor would be denied discharge of the student loan for failure to meet the third prong.

Accordingly it is ORDERED and ADJUDGED that the Debtor's student loan obligation to ECMC is not discharged. A separate final judgment will be entered.